## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

E.A. RENFROE & COMPANY, INC.                                    PLAINTIFF

  **VERSUS**                                                    № 3:07-MC-036-SAA
                                                                № 2:06-CV-1752-WMA
                                                                *(Predicate Case in N.D. Ala.)*

CORI RIGSBY MORAN, ET AL.                                       DEFENDANTS

### ORDER GRANTING MOTION {№1} TO QUASH SUBPOENAS

Movants—Richard F. Scruggs, D. Zachary Scruggs, and Timothy Cantrell[1]—seek an order quashing the subpoenas E.A. Renfroe & Company served on them in connection with *E.A. Renfroe & Company v. Cori Rigsby Moran, et al.*, 2:06-CV-1752-WMA, a case pending in the United States District Court for the Northern District of Alabama.

The movants argue that: (1) the subpoenas seek privileged and protected information; (2) Renfroe fails to meet the high burden necessary to depose opposing

---

[1] Richard Scruggs and D. Zachary Scruggs are attorneys licensed in Mississippi, and members of the Scruggs Law Firm. Timothy Cantrell is a non-lawyer, who is the Chief Financial Officer of the Scruggs Law Firm.

-1-

counsel;[2] (3) the subpoenas subject the movants to an unreasonable and undue burden;[3] and, (4) the subpoenas are an artifice to harass and annoy the movants.

Renfroe counters that the movants' concern about inquiring into privileged information or into issues where Richard Scruggs would likely plead his self-incrimination rights do not warrant ending the inquiry altogether.

For the following reasons, the Motion {№ 1} to Quash is **GRANTED**. The subpoenas issued to the petitioners shall have **NEITHER FORCE NOR EFFECT**.

## I. Facts and Procedural History

E.A. Renfroe & Company employed Cori Rigsby Moran and Kerri Rigsby as insurance adjusters provided to State Farm Insurance Company as temporary assistance in handling the large number of insurance claims after Hurricane Katrina. While working, the Rigsbys allegedly discovered documents evidencing a scheme to deny insurance claims fraudulently. They decided to download thousands of documents belonging to Renfroe or State Farm and send copies to various prosecutors; in the summer of 2006, the Rigsbys also sent a copy to Richard Scruggs, who was, by

---

[2]Although the movants are not counsel in the *E.A. Renfroe & Company* case, the Scruggs law firm is representing the *Renfroe* defendants in a *qui tam* action against Renfroe in the Southern District of Mississippi, as well as a number of homeowners—also against Renfroe—in other actions growing out of denial of claims post-Katrina

[3] Richard Scruggs, and the Scruggs Law Firm, are currently defending a criminal contempt proceeding in the Northern District of Alabama growing out of the *E.A. Renfroe & Company* case. The complaint alleges that Scruggs knowingly ignored a preliminary injunction issued by that court. Because the judicial officers of the Northern District of Alabama have recused themselves from that proceeding, it awaits a presiding judge, to be appointed by the Hon. J. L. Edmondson, Chief Judge, United States Court of Appeals for the Eleventh Circuit.

that time, their attorney. The Rigsbys later became consultants with the Scruggs Katrina Group, a consortium of attorneys who represent insured parties in suits against various insurance companies.

E.A. Renfroe filed suit against the Rigsbys in the United States District Court for the Northern District of Alabama. Renfroe alleged, among other things, that the Rigsbys violated Alabama's Trade Secret Act. Renfroe obtained a preliminary injunction on December 8, 2006 that required the return of all Renfroe or State Farm documents that the Rigsbys, "and their agents, servants, employees, attorneys, and other persons in active concert or participation" had retained; the injunction also contained what movants describe as a "law enforcement exception."[4]

On December 12, 2006, Richard Scruggs sent a copy of the documents to the Mississippi Attorney General, at the Attorney General's request. Thereafter, Renfroe moved for Scruggs to be held in contempt for allegedly violating the preliminary injunction. The court declined to find Scruggs, or the Scruggs Law Firm, in civil contempt, but referred the matter to the United States Attorney for consideration of criminal contempt charges. The U.S. Attorney refused to prosecute. The court then appointed private attorneys to prosecute the charges, which remain pending in the United States District Court for the Northern District of Alabama, awaiting the appointment of a presiding judge.

---

[4] Specifically, the injunction directed that defendants and their agents "are further ENJOINED not to further disclose, use or misappropriate any material described . . . unless to law enforcement officials at their request."

In this latest round of subpoenas, Renfroe would like to depose the movants as employers of the Rigsbys, "to determine what confidential or trade secret information the Rigsbys disclosed to Scruggs, their new employer, in violation of their [the Rigsbys'] contract."

## II. Discussion

Of the four reasons the movants offer, the court will address only one: (A) whether the subpoenas are an undue burden.

### A. *The Subpoenas Represent an Undue Burden on Petitioners*

This court must quash a subpoena when it imposes an "undue burden" on the individual subpoenaed. *See* FED. R. CIV. P. 45(c)(3)(A)(iv). The moving party has the burden of proof "to demonstrate that compliance with the subpoena would be 'unreasonable and oppressive.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Whether a subpoena is unreasonable and oppressive (substantively equivalent to "undue burden") is a fact-based inquiry, where this court applies recognized factors to this case. *See id.* (outlining relevant factors). For a subpoena *ad testificandum*, those factors are: (1) the relevancy of the proposed testimony; (2) the need for the testimony; (3) the breadth of the subpoena; (4) availability of the testimony by other means; (5) burden on the subpoenaed party in obeying the subpoena. Collapsed down to its essence, the inquiry is one of balancing burden against benefit.

Renfroe would elicit testimony from the movants "on what confidential or trade secret information the Rigsbys disclosed to [the movants], their new employer, in violation of their [the Rigsbys'] contract."

***Relevancy***. There is no question that the movants would have first-hand knowledge relevant to the Renfroe's case against the Rigsbys.

***Need***. The predicate case (*Renfroe v. Rigsbys*) turns on whether the Rigsbys disclosed confidential communication, thereby violating the terms of their employment contracts and Alabama law concerning trade secrets. By these subpoenas, Renfroe would like to determine the degree, if any, to which the Rigsbys disclosed confidential information in one instance. In a larger sense, there is no question that Renfroe needs information about disclosures to win its case. However, it is not clear that Renfroe needs to a justifiably degree the testimony of a non-party, attorney (and now employer) of the Rigsbys. Presumably, the Rigsbys, parties to the predicate case, can testify about a disclosure to the movants just as well, if not better, as the movants. Moreover, the need for more information than it already possesses, is questionable; after all, this is not a case involving claims of violation of a non-compete clause or that revelation of the information in question will be used by a business competitor. Finally, as noted below it is unlikely that the "need" for this information will be satisfied by deposing the movants.

***Breadth***. This factor is a wash. Leaving off issues of attorney/client privilege, work product protections and Fifth Amendment privilege – insofar as that is possible – the intended scope of the deposition is sufficiently narrow not to offend.

***Availability by Other Means***. Again, it appears that information about any disclosure from the Rigsbys to the movants can came from the Rigsbys, as well as from the petitioners. If Renfroe wants to know about what the Rigsbys disclosed, if anything, to the petitioners, it seems easier, especially absent any indication to the contrary, to get that information the Rigsbys. Clearly, Renfroe now knows all the documentation that was revealed.

***Burden on the Subpoenaed Party***. As previously mentioned, Richard Scruggs, and the Scruggs law firm, are defendants in a pending criminal contempt proceeding in the Northern District of Alabama. That criminal proceeding, as the court understands it, tracks similar subject matter as the intended topics of the depositions Renfroe would like to conduct. Although the specter of invoking a constitutional privilege usually does not alone justify ending a deposition altogether, the court fails to see how an individual facing criminal contempt charges could comment in a civil proceeding about topics that form the substance of the criminal charges without invoking a constitutional right in response to every question, except perfunctory, context-setting questions (*e.g.*, What is your name?). When a deposition serves no useful, productive purpose, it would waste precious judicial, and lawyerly, resources to order its occurrence. In light of the many other pending lawsuits in which the Scruggs Law Firm and Renfroe are involved, it is very clear to the court that the response to nearly every question during these depositions would be invocation of one or more of the multiple privilege/work product protections noted above. And, more to the point, it would pose a substantial hardship on the

petitioners to submit to a civil deposition before the criminal proceeding is concluded.[5]

***Overall***. The court concludes that the petitioners have met their burden and have shown this court that the subpoenas represent an "undue burden." Consequently, this court is required to quash them. *See* FED. R. CIV. P. 45(c)(3)(A)(iv.).

## III. Conclusion

For the foregoing reasons, the petitioners' motion {№ 1} to quash is **GRANTED**. The subpoenas issued to the petitioner shall have neither **FORCE NOR EFFECT**.[6]

**SO ORDERED**, this the 3d day of December, 2007.

/S/ *S. Allan Alexander*
UNITED STATES MAGISTRATE JUDGE

---

[5] Additionally, whether it wishes to do so or not, Renfroe has the option of seeking a continuance of the civil case until conclusion of the criminal proceedings against Richard Scruggs and the Scruggs Law Firm.

[6] As the court's inquiry is fact-based, it is possible that a change in circumstances (*e.g.,* the criminal contempt proceeding is concluded) would alter the court's judgment. Should a party perceive such a change of circumstance, they may bring that to the court's attention.

-7-